NICHOLAS J.P. WAGNER
California State Bar No. 109455
THE WAGNER LAW GROUP, PC
1111 E Herndon Ave. Suite 317
Fresno, California 93720
Telephone: (559) 449-1800
Email: butch@thewagnerlawgroup.com

Laura Elizabeth Brown
California State Bar No. 306035
P.O. Box 16211
Fresno, California 93755
Tel.: (559) 862-8633
Email: laura@lauraebrown.com

*Counsel for Plaintiff F.G.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| F.G., an individual,<br><br>        Plaintiff<br>    v.<br><br>UNITED STATES OF AMERICA;<br>FEDERAL BUREAU OF PRISONS;<br>FEDERAL CORRECTIONAL<br>INSTITUTION-DUBLIN; RAY J.<br>GARCIA, RYAN KERSHAW, an<br>individual, and DOES 1 to 20.<br><br>        Defendants. | CASE NO.<br><br><br><br>**COMPLAINT**<br>• Violation of Eighth Amendment<br>• Sexual Battery<br>• Gender Violence<br>• Civil Conspiracy<br>• Battery<br>• Negligence<br>• Infliction of Emotional Distress<br><br>JURY TRIAL DEMANDED |

COMPLAINT

Plaintiff alleges:

## THE PARTIES

1.      Plaintiff F.G. is an individual residing in Ogden, Utah. During the relevant period, 2021 to 2022, Plaintiff was in the custody of the Federal Bureau of Prisons in whose care she was incarcerated at Federal Correctional Institution-Dublin in Dublin, California. Plaintiff is presently out of custody and not incarcerated or detained in any correctional facility.

2.      Defendant Federal Bureau of Prisons (BOP) is government agency headquartered in Washington D.C under the U.S. Department of Justice. Defendant BOP is responsible for the care, custody, and control of federal prisoners and the operation and management of federal correctional institutions. On information and belief: Defendant BOP knew or should have known of the individual defendants' past histories, proclivities, and propensities for threats, violence, sexual abuse, harassment, retaliation, misuse of authority, and prior violations of BOP policies, procedures, rules, and regulations and Defendant BOP permitted, consented to, and/or ratified their conduct individually and collectively. Defendant Federal Correctional Institution-Dublin (FCI Dublin) is a low-security facility that houses female inmates and operates under the control of its supervising agency, Defendant BOP. It is located in Dublin, California, which is within the federal judicial district for the Northern District of California.

2

COMPLAINT

3.    Defendant United States of America (USA) is a government entity. During the relevant period, the United States, by and through its federal agency BOP, held possession of and exercised control over FCI Dublin. The United States has waived sovereign immunity to Plaintiff' tort claims. 28 U.S.C. §2674; *cf. id.* at §2680(h).

4.    On information and belief: Defendant Ray J. Garcia (Garcia) is an individual who lives and resides in the State of California and is currently incarcerated at a residential reentry management facility in Kansas City, Kansas. During the relevant period, Garcia was employed by BOP and working at FCI Dublin as the warden. With respect to the allegations in this complaint, he acted under color of authority while employed as the warden, and Defendants USA and BOP permitted, consented to, and/or ratified his conduct.

5.    On information and belief: Defendant Officer RYAN KERSHAW is an individual who lives and resides in the State of California. During the relevant period, he was employed by BOP and working at FCI Dublin as a correctional officer. With respect to the allegations in this complaint, he acted under color of authority while employed as a correctional officer and Defendants USA and BOP permitted, consented to, and/or ratified his conduct.

6.    Plaintiff is ignorant of the identities of DOES 1 through 20, inclusive,

3

COMPLAINT

7. Plaintiff is ignorant of the identities of DOES 1 through 20, inclusive, and therefore sue them under fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. On information and belief: DOES 1 through 20, individually and/or collectively, were responsible for the occurrences alleged herein and their acts or omissions were a proximate cause of Plaintiff' injuries. References in this complaint to the "Defendants" include DOES 1 through 20 unless otherwise stated. While the Federal Code of Civil Procedure does not reference DOE defendants, their use here is appropriate given the extent of the collusion and cover-up of abuse at FCI Dublin which by its nature acted to conceal the identities of those responsible for misconduct against Plaintiff.

8. During the relevant period, Defendants were agents, employees, partners, joint-venturers, conspirators, owners, principles and/or employers of one another, and acted within the course and scope of such relationships. Each defendant's conduct was known, authorized, permitted, and/or ratified by the other defendants, individually and collectively.

**JURISDICTION & VENUE**

9. Diversity jurisdiction exists under 28 U.S.C. §1332 because Plaintiff and Defendants have diversity of citizenship and the amount in controversy exceeds $75,000.00.

10. Federal question jurisdiction exists under 28 U.S.C. §1331 over

4

COMPLAINT

Plaintiff's constitutional claims under the U.S. Constitution and related federal statutes, and their federal tort claims under the Federal Tort Claims Act.

11. Supplemental jurisdiction exists under 28 U.S.C. §1367 over Plaintiff' state law claims arising from California statutory, common law, and constitutional authority as they are predicated on the same operative facts giving rise to Plaintiff' federal-question claims.

12. Personal jurisdiction exists because Defendants, as pleaded on information and belief, live and reside in the State of California. Specific jurisdiction exists because Defendants committed the acts and omissions at issue in this case within the State of California.

13. Venue is proper in this judicial district under 28 U.S.C. §§1391(b)(2) and 1402(b) because the conduct giving rise to Plaintiff' claims occurred at FCI Dublin in Dublin, California. Assignment is proper to the San Francisco Division of the Northern District of California because the conduct giving rise to Plaintiff's claims occurred at FCI Dublin which is located in Alameda County, California.

**GENERAL ALLEGATIONS**

14. **As to FCI Dublin generally:**

a. FCI Dublin has a well-documented history of sexual abuse, retaliation, conspiracy, and cover-up by prison employees against the female inmates housed there. This culture of abuse stemmed from the very top and

5

COMPLAINT

pervaded down the ranks to every facet of operations and has been the subject of investigations by reputable media outlets, federal agencies, and at least one congressional sub-committee.

b.      On February 6, 2022, for example, AP News reported: "Inside one of the only federal women's prisons in the United States, inmates say they have been subjected to rampant sexual abuse by correctional officers, and even the warden, were often threatened or punished when they tried to speak up. [¶] Prisoners and workers at the federal correctional institution in Dublin, California, even have a name for it: 'The rape club.' [¶] An Associated Press investigation has found a permissive and toxic culture at the Bay area lockup, enabling years of sexual misconduct by predatory employees and cover-ups that have largely kept the abuse out of the public eye. [¶] The AP obtained internal Bureau of Prisons documents, statements and recordings from inmates, interviewed current and former prison employees, and reviewed thousands of pages of court records from criminal and civil cases involving Dublin Prison staff. [¶] Together, they detail how inmates' allegations against members of the mostly male staff were ignored or set aside, how prisoners could be sent to solitary confinement for reporting abuse and how officials in charge of preventing and investigating sexual misconduct were themselves accused of abusing inmates or neglecting their concerns." Michael Balsamo and

COMPLAINT

Michael R. Sisak, *AP investigation: Women's prison fostered culture of abuse*, AP News, February 6, 2022, https://apnews.com/article/prisons-california-united-states-sexual-abuse-only-on-ap-d321ae51fe93dfd9d6e5754383a95801.

       c.     On August 31, 2022, the Office of Public Affairs for the Department of Justice issued a press release stating: "James TheodoreHighhouse, 50, a former chaplain with the Federal Bureau of Prisons (BOP) was sentenced today in federal court to 84 months in prison followed by five years of supervised released[sic] for repeatedly sexually abusing an incarcerated female and then lying to federal agents about his misconduct… [¶] Highhouse previously entered a guilty plea to five felonies on Feb. 23, 2022. According to court documents, Highhouse was employed by the BOP as a corrections worker and chaplain starting in 2016 and was assigned to work at [FCI Dublin]…. At times, Highhouse also performed a custodial role, that is, he could handcuff inmates, write up incident reports and refer inmates for disciplinary action. [¶] In imposing sentence, the judge considered the defendant's systemic abuse of the victim as well as the accounts of other women whom the defendant subjected to sexual misconduct. The judge specifically noted the defendant's 'sustained predatory behavior against traumatized and defenseless women in prison.' " U.S. Department of Justice, Office of Public Affairs, Federal Prison Chaplain Sentenced for Sexual Assault and

COMPLAINT

Lying to Federal Agents, August 31, 2022, https://www.justice.gov/opa/pr/federal-prison-chaplain-sentenced-sexual-assault-and-lying-federal-agents.

d.      On September 29, 2022, the San Francisco Chronicle reported: "A former guard at the federal women's prison in Dublin was charged Thursday with sexually abusing two more inmates, the latest in a series of sex-abuse charges against officers and a former warden at the Federal Correctional Institution. [¶] John Bellhouse was initially indicted… in February on a charge of abusive sexual contact with a female inmate in 2020 and pleaded not guilty. On Thursday, the grand jury issued a new indictment accusing Bellhouse, 39, of two additional charges of abusing the same woman, between December 2019 and October 2020, and three more charges of touching the thighs and buttocks of two other female prisoners in 2020." Bob Egelko, *Sex abuse charges against former Dublin prison guard are the latest in a string of serious incidents*, September 29, 2022, https://www.sfchronicle.com/bayarea/article/Sex-abuse-charges-against-former-Dublin-prison-17476669.php.

e.      On October 27, 2022, the U.S. Attorney's Office issued a press release that stated: "Enrique Chavez pleaded guilty in federal court today to abusive sexual contact with a female prison inmate while he was employed as a correctional officer at [FCI Dublin] in Alameda County. [¶¶¶] Chavez admitted

today in his plea agreement that during October 2020 he met Victim 1 in the food service pantry at FCI Dublin. After they met in the pantry, Chavez locked the door. The lights were turned off. Chavez admitted to putting his hand inside Victim 1's underwear and touching her genitals. Chavez also admitted to touching the victim's breasts. [¶] Chavez pleaded guilty today to one count of abusive sexual contact with a prisoner in violation of 18 U.S.C. § 2244(a)(4)." U.S. Attorney's Office, Northern District of California, *Former Correctional Officer Admits to Abusive Sexual Contact with Inmate*, October 27, 2022, https://oig.justice.gov/sites/default/files/2022-10/10-27-2022.pdf.

f.    Chavez had previously been identified as a correctional officer who "supervised and had disciplinary authority over the female inmates incarcerated at FCI Dublin. Chavez was trained in BOP policies and procedures, which included instructions that sexual, financial and social relationships with inmates are prohibited." U.S. Department of Justice, Office of Public Affairs, *Correctional Officer at FCI Dublin Charged for Abusive Sexual Contact with Female Inmate*, March 23, 2022, https://oig.justice.gov/sites/default/files/2022-04/03-23-2022.pdf.

g.    On December 8, 2022, the Office of Public Affairs for the Department of Justice issued another press release that stated: "A federal jury and convicted former prison warden Ray J. Garcia of seven counts involving sexually

9

COMPLAINT

abusive conduct against three female victims who were serving prison sentences and one count of making false statements to government agents. [¶] Garcia, 55, of Merced, California, was initially charged with sexual abuse of an inmate on Sept. 24, 2021. A federal grand jury issued a superseding indictment on Aug. 23, 2022, charging Garcia with three counts of sexual abuse and four counts of abusive sexual contact against three female inmates. The criminal acts were alleged to have occurred from December 2019 to July 2021." U.S. Department of Justice, Office of Public Affairs, *Jury Convicts Former Federal Prison Warden for Sexual Abuse of Three Female Inmates*, December 8, 2022, https://www.justice.gov/opa/pr/jury-convicts-former-federal-prison-warden-sexual-abuse-three-female-inmates.     In 2023, Ray J. Garcia was convicted and sentenced to 5 years and 10 months for sex crimes he committed while he was the warden at FCI Dublin.

h.     On December 13, 2022, the Inspector General for the Department of Justice published a copy of his remarks to the U.S. Senate Committee on Homeland Security and Government Affairs, Permanent Subcommittee on Investigations concerning "Sexual Abuse of Female Prisoners in the Custody of the Federal Bureau of Prisons," which stated: "The OIG's oversight authority includes wrongdoing by BOP personnel who are accused of sexually assaulting inmates. There is no clearer reminder of the importance of our work than the testimony we heard from Ms. Delarosa, Ms. Moore, and Ms. Richardson…. Indeed,

10

COMPLAINT

just last week, a jury in California convicted the former Warden at [FCI Dublin], which prompted my office, working with the FBI and the U.S. Attorney's Office… to conduct a widespread sexual misconduct investigation at the prison." Statement of Michael E. Horowitz, Inspector General, December 12, 2022, at 1, https://oig.justice.gov/sites/default/files/2022-12/12-13-2022.pdf. "[T]he OIG, in partnership with the FBI and the USAO, has an ongoing investigation of alleged widespread sexual assaults between 2018 and 2021 by numerous BOP officials against inmates at FCI Dublin, an all-female prison in California. To date, our ongoing investigation has resulted in 5 employees at FCI Dublin being charged criminally, including the former warden who just last week was convicted by a jury on 8 separate charges, including multiple counts of sexual abuse, illegal sexual contact with inmates, and lying to investigators." *Id.* at 3.

i. Also, on December 13, 2022, the Permanent Subcommittee on Investigations for the U.S. Senate released a report in conjunction with its hearing that day that stated: "FCI Dublin is an all-female facility with two components: a low security federal correctional institution and an adjacent minimum-security satellite camp. There are currently 477 female offenders housed across the prison." U.S. Senate, Permanent Subcommittee on Investigations, Staff Report, December 13, 2022, at 15, footnotes omitted, https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-

11

COMPLAINT

%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf.[1]

j.      The staff report stated five employees had been indicted "for sexual abuse of at least eight female detainees at FCI Dublin." *Id.* These included (1) RYAN KERSHAW, a former BOP correctional officer and recycling technician who was indicted in June 2021 and subsequently "pleaded guilty to three counts of sexual abuse of a ward." *Id.* at 15-16. (2) Ray J. Garcia, the former warden, who was charged with having "knowingly had sexual contact with at least one female prisoner, asked at least two inmates to strip naked for him during rounds and took photos, and stored a 'large volume of sexually graphic photographs' on his BOP issued cellphone. In the two years prior to his arrest, Garcia was the PREA compliance officer at FCI Dublin, responsible for ensuring that the facility was adhering to PREA policies and training other employees, including new supervisors." *Id.* at 16. (3) John Bellhouse, a correctional officer and safety administrator, who was charged with sexual abuse of a prison ward after "a prisoner identified that Bellhouse and another BOP employee were engaging in sexual interactions with several prisoners, and also providing prisoners with contraband, money and personal cellphone use." *Id.* (4) James Highhouse, a former

---

[1]      Due to their voluminous nature, footnotes are omitted from the quoted portions of the Subcommittee's staff report dated December 13, 2022. Future references to the staff report should be understood to have footnotes omitted.

COMPLAINT

chaplain, who pleaded guilty after being charged with sexual abuse of a ward, abusive sexual contact, and making false statements to investigators." *Id.* And finally (5), "Enrique Chaves, a food service foreman… was indicted on two counts of abusive sexual contact with a prison inmate." *Id.* The staff report further stated: "As of May 2022, OIG and/or BOP were investigating at least 17 additional current or former employees at FCI Dublin for sexual misconduct." *Id.*

k.    In all, the Subcommittee identified at least 19 female prisoners who were sexually abused by BOP employees at FCI Dublin from 2012 to 2022. This list was determined by tallying cases where a male BOP employee pleaded guilty or was convicted of sexually abusing a female prisoner and cases where BOP OIA substantiated allegations of sexual abuse by male BOP employees. *Id.* at Exhibit 1 at 1-2.

l.    Most recently, on April 6, 2023, The Guardian reported on a particular case for an inmate named Cristal who was pursuing a case against BOP: "When Cristal arrived at FCI Dublin in September 2019, guards put her to work as a cook. She was grateful for the job… But almost immediately, an officer overseeing the kitchen began harassing her, she said, pressuring her to go to the backroom where there were no cameras; threatening to expose himself; rubbing and grabbing her from behind; demanding she 'bend over'; and calling her demeaning names when she refused." Sam Levin, *She reported being abused by*

*US prison guards. Now she faces deportation*, The Guardian, April 6, 2023, https://www.theguardian.com/us-news/2023/apr/06/federal-prison-sexual-abuse-deportation-california-mexico. "Cristal's nightmare is not an anomaly, but a common experience across the Federal Correctional Institution (FCI), east of San Francisco. Indictments against five officers show that guards systemically victimized women in their custody, intimidated them into silence, [and] lied to cover up crimes." *Id.*

15.    **As to the Prison Rape Elimination Act (PREA):**

a.    The Prison Rape Elimination Act Standards are codified in 28 C.F.R. §115.5 *et seq.* and set forth extensive requirements for BOP with respect to the prevention, detection, and response to "all forms of sexual abuse and sexual harassment." 28 C.F.R. §115.11(b), (c).

b.    Sexual assault is defined as "Any… intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties…" or "Any attempt, threat, or request to engage in [such activity]" 28 C.F.R. §115.6. Sexual harassment is defined as repeated gestures of a sexual nature to an inmate by a staff member including obscene language or gestures. *Id.*

c.    PREA's requirements include mandatory reporting duties for

14

COMPLAINT

all staff to immediately report "any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." *Id.* at §115.61(a). "The facility shall report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators." *Id.* at §115.61(e).

d.    PREA's requirements also include mandatory protection duties. "When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate." *Id.* at §115.62. In addition to acting to ensure an inmate's physical safety, BOP is required to affirmatively protect from retaliation "all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff" and "shall employ multiple protection measures" to do so. *Id.* at §115.67(a), (b).

e.    Transfer to the Special Housing Unit is not an appropriate measure to protect an inmate from sexual assault, sexual harassment, or retaliation unless no other methods are available to ensure their safety. "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing

15

COMPLAINT

unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers." *Id.* at §115.43(a).

f.    "PREA 'is intended to make confinement facilities free from sexual abuse and its threat.' When Congress passed PREA in 2003, it established a National Prison Rape Elimination Commission (the 'NPRE Commission') to 'carry out a comprehensive legal and factual study of the penological, physical, mental, medical, social, and economic impacts of prison rape' and to issue a report with 'recommended national standards for reducing prison rape[.]' The recommendations, adopted by DOJ and binding on BOP, require periodic PREA audits of all federal correctional facilities to ensure compliance with the standards put forth in the regulations. According to DOJ, PREA auditors 'are responsible for conducting high quality, reliable, objective, and comprehensive audits that hold agencies and facilities accountable for keeping individuals in their custody and care safe from sexual abuse and sexual harassment.' " U.S. Senate, Permanent Subcommittee on Investigations, Staff Report, *supra*, at 19.

g.    "PREA audits assess whether an institution is compliant with the 45 PREA standards by reviewing policies and practices within the institution, interviewing employees and prisoners, and reviewing documentation from the audit period, such as prisoner complaints of sexual abuse or harassment." *Id.* at 19-20.

COMPLAINT

The Permanent Subcommittee on Investigations reviewed the PREA audits of "FCI Dublin—where there were, per BOP OIA Chief Reese, 'cultural issues' concerning sexual misconduct by employees—to evaluate whether the audits detected that there was a sexual abuse problem. In other words, did the PREA audits predating and during the period of multiple BOP employees abusing multiple women find that the prison was not compliant with some or all of the PREA standards? Did the audits covering the periods of significant sexual abuse detect the cultural issues at that prison? [¶] The Subcommittee found that BOP failed to accomplish either outcome with its PREA audits." *Id.* These audits all "came back clean" and found that FCI Dublin was  "compliant with all PREA standards before, during, and after the multiple, documented instances of sexual abuse." *Id.* at 20.

h. As to the 45 PREA standards: The 2014 audit report found that FCI Dublin had met or exceeded 42 standards, and that one standard was not applicable; it is unclear what two standards were not included in the results. The 2017 audit found that FCI Dublin had met 42 standards and that two standards were not applicable; it is unclear which standard was not included in the results. The 2022 audit found that FCI Dublin had met all 45 PREA standards. *Id.* at 21.

i. Upon consideration of written documentation and testimonial evidence regarding PREA compliance, the Subcommittee concluded: "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees.

The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities [including FCI Dublin] to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms." *Id.* at 30.

j.      Throughout the relevant time period, Defendants continually violated PREA Standards and acted in concert to conceal their misconduct.

k.      More recently, the District Court for the Northern District of California recently imposed a preliminary injunction against FCI Dublin and imposed a special master to oversee management of FCI Dublin based on the court's findings that BOP was unable to effectively manage FCI Dublin on its own.

l.      The Court announced that it would appoint a Special Master to be onsite at FCI Dublin. After a several-week process of party-nominations and Court interviews, the Court Selected Wendy Still, as Special Master.

m.     Ms. Still began her on-site presence at FCI Dublin on April 8, 2024 and four days later, on April 12, 2024, the BOP informed the Court in a sealed filing that it would close FCI Dublin. As BOP rushed to close the facility and move inmates to other facilities nationwide, inmates reported horrific conditions of their transfer

18

COMPLAINT

including physical and psychological abuse, medical neglect, rampant loss of property, and denial of basic necessities for hours and days during transport.

n.    On May 8, 2024, the Court issued an Order re Closure of FCI Dublin & Preliminary Injunction detailing the impacts of the "ill conceived" closure on the remaining inmates' welfare, the steps taken to attempt to mitigate those impacts by the Court and Special Mater, and additional steps necessary to further protect the inmates.

o.    As the Court's May 8, 2024 Order noted, "the BOP cannot hide from or escape its obligations merely by closing FCI Dublin." The Special Master still authored a Special Master Report issued on June 5, 2024 detailing her findings and recommendations after her time at FCI Dublin, "found numerous operational, policy and constitutional violations," including "the failure of Central Office and Regional Office management to correct significant and longstanding deficiencies that had previously been identified in multiple audits and investigations," which "put the health, safety and liberty of adults in custody (AIC) at great risk for many years." Still concluded that "[i]t is unconscionable that any correctional agency could allow incarcerated individuals under their control and responsibility to be subject to the conditions that existed at FCI-Dublin for such an extended period of time without correction," and noted "concerns that the mistreatment, neglect and abuse the AICs received at FCI-Dublin not be repeated at the facilities where these

19

COMPLAINT

individuals are being transferred to as many conditions that existed at this facility appear to be longstanding and systemic in nature."

16. **As to Plaintiff F.G.:**

p.    Plaintiff suffered sex-based harassment, abuse, battery, retaliation, and discrimination during her incarceration at FCI Dublin beginning on or about January 2021 through her release on or about 2022. On information and belief, she knew the facts before, during, and/or after the harms she suffered as described in this complaint.

q.    While incarcerated, Plaintiff worked in the recreational areas and in the laundry services department. When she was placed there, the other inmates warned her, "everyone minds their own business here" and that she was expected to do as she was told and to keep her mouth shut or she would end up in the SHU. This basically entailed turning a blind eye while male BOP employees and their activities with other female inmates and to warn these employees and inmates who were "lookouts" if other staff were approaching the area. Plaintiff was also warned that her spot in any job was dependent on her not saying anything or she would lose her job.

d.    Defendant Kershaw's conduct was unwanted and persistent, and never reported, which led Plaintiff to reasonably believe that any report she made would not be properly responded to. In addition, she had seen women

20

COMPLAINT

complain of sexual misconduct by BOP employees who were then subjected to retaliation by, for example, being sent to the Special Housing Unit as a punitive retaliatory measure.

e.    Defendant Officer RYAN KERSHAW, another male employe who had a history of verbal abuse towards the inmates and was reported for his behavior numerous times by the inmates. Claimant suffered sexual harassment and sex-based discrimination during her incarceration at FCI Dublin beginning January 2O2l to the year 2022 when she was released from custody. Claimant was sexually assaulted, abused and harassed by Officer Ryan Kershaw (herein referred to as "Kershaw"), a male guard at FCI Dublin, while incarcerated. When arrived at FCI Dublin, it was during COVID, and the inmates were under quarantine lockdown protocol. Claimant's roommate at the time was Marie Washington (Marie). who was also sexually harassed, abused and retaliated against by Kershaw. During Kershaw's rounds, checking on inmates in their cells, was during the night hours, and he stopped by claimant's cell often. Kersha stopped by claimant's cell at least 5-10 times a night and speak to her roommate, Marie, making small talk and always with sexual references about how long his penis was, and asking Marie if her ass was real. Kershaw stopped by claimant's cell at least 5 to l0 times a night, shining his flashlight on them and talking dirty to them. One of the nights when Kershaw was on his rounds, he came to claimant

21

COMPLAINT

and Marie's cell shining his flashlight on them and demanded that they both take their clothes off and open up their vaginas so he can see them. Claimant and Marie did as they were told. Kershaw them demanded Marie to go down on claimant because he wanted to know how a Mexican pussy tastes like and told Marie to do it, and Marie complied. Claimant was embarrassed and felt violated after she stripped off her clothes, she was naked, and Marie did what she did to her because Kershaw demanded it. Kershaw told claimant and Marie that he does not work in their unit, he works in another unit, and he sneaks to their unit so he can talk Marie. The women who had sexual relationships with BOP employees received preferential treatment. Those who objected to, rejected, or complained of sexual attention were subjected to worse treatment.

f.    Defendant Kershaw's conduct was unwanted and persistent, and defendants failed to act on reports by inmates of Defendant Kershaw's behavior, which led Plaintiff to reasonably believe that any report she made would not be properly responded to. In addition, she had seen women complain of sexual misconduct by BOP employees who were then subjected to retaliation by, for example, being sent to the Special Housing Unit as a punitive retaliatory measure.

g.    The culture of retaliation, collusion, cover-up, and abuse at FCI Dublin was so pervasive and overwhelming that Plaintiff reasonably believed it was safer to remain quiet than report the abuse she suffered, because the women

22

COMPLAINT

who had reported misconduct were subjected to retaliatory abuse, harassment, selective enforcement of rules, and punitive imposition of unfair, unjust, and unwarranted punishments including being sent to the Special Housing Unit without due cause.

h.    On information and belief: Defendants received numerous reports of misconduct and complaints of sexual harassment and abuse made by female inmates against the defendants, including Defendants Kershaw, yet failed to act on those complaints. Defendants knew or should have known of their misconduct but failed to properly investigate, impose discipline, and implement safeguards to ensure the women at FCI Dublin like Plaintiff were protected. Had Defendants properly investigated, intervened, and imposed discipline, and taken other corrective actions as it was legally required to do in response to the complaints, Plaintiff would not have been harmed.

i.    Plaintiff suffered statutory, common law, and constitutional Defendants had a duty to keep Plaintiff safe during her period of incarceration and failed to do so. Defendants knew, or should have known, about the abuse she was subjected to and failed to intervene and protect her from the conduct of the other defendants. Defendants' had a non-delegable duty to act in her best interest given her status as an inmate under the other defendants' complete control.

j.    The conduct described in this paragraph and Plaintiff's

23

COMPLAINT

statement (Attachment A), occurred from Plaintiff's admission into FCI Dublin through the date of her release as described and harmed her by causing her physical injury and to suffer emotional distress and pain and suffering including but not limited to anxiety, fear, sleeplessness, anger, and intrusive/invasive thoughts on a daily basis.

k.    Plaintiff complied with the Federal Tort Claims Act (FTCA) submitting a completed claim form to BOP that included the information required by statute and within the time period prescribed by law. Plaintiff has further satisfied her obligations under the FTCA by filing this complaint within the time limits prescribed by law.

**FIRST CAUSE OF ACTION**

VIOLATION OF EIGHTH AMENDMENT

17.    Paragraphs 1 through 16 are incorporated by reference.

18.    Plaintiff allege cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States of America and the FTCA.

19.    "The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." *Wood v. Beauclair*, 692 F.3d 1041, 1045-1046 (9th Cir. 2012). "The requirements for proving an actionable violation of the Eighth Amendment are well established. First, an inmate must demonstrate that the deprivation suffered

24

COMPLAINT

suffered was objectively, sufficiently serious. Then, the inmate must establish that prison officials had a sufficiently culpable state of mind in allowing the deprivation to take place. The latter requirement has been defined as being deliberately indifferent to an inmate's health or safety." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (cleaned up).

20.    "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood*, *supra.* at 1046. In the Ninth Circuit, forcible sexual contact satisfies these requirements when "a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner. *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). "[C]ourts must presume malicious and sadistic intent where there is no legitimate penological purpose for a prison official's conduct." *Anderson v. Ferguson* (N.D. Cal., Mar. 14, 2022, 20-cv-04368-HSG) at *15 (citing *Wood*, *supra*, 692 F.3d 1041 at 1050).

21.    A prison official violates the Eighth Amendment under the deliberate indifference standard by ignoring risks of serious harm to an inmate's health or safety. Under the deliberate indifference standard, the harm must be objectively

25

COMPLAINT

serious (*i.e.,* the inmate is incarcerated under conditions posing a substantial risk of serious harm) and the official must be subjectively indifferent to the risk of harm (*i.e.*, the prison official must be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists and must also draw the inference). The prison official need not believe harm will occur; it is enough to fail to act despite knowledge of substantial risk of serious harm. Knowledge can be inferred from the circumstances and can be found when the risk was obvious. *Schrubb v. Simmons* (N.D. Cal., Aug. 29, 2022, 12-cv-00418-JSW) at *9 (applying *Farmer v. Brennan*, 511 U.S. 825 (1994).)

22.    Plaintiff alleges violations of her Eighth Amendment rights as follows:

b.    Against Defendant Kershaw in his individual capacity for forcing Plaintiff to perform and engage in sexual activity under pain of death.

i. At all relevant times, Defendant Kershaw was a federal employee of Defendants BOP and USA working at FCI Dublin and acting under color of authority with respect to the allegations in this complaint. Defendant Kershaw was a correctional officer responsible for the safekeeping and protection of Plaintiff who was an inmate under his care.

ii. There was no legitimate penological purpose for this conduct and he did so for sexual gratification and/or to humiliate, degrade, or demean her.

26

COMPLAINT

iii. By intentionally subjecting Plaintiff to perform sexual acts and engage in sexual acts, defendant acted maliciously, in a manner deeply offensive to human dignity, and void of any penological justification. Defendant's actions fell so far below the acceptable standard of custodial conduct that he could not have been making a policy judgment in his decision to sexually assault her.

iv. By repeatedly subjecting Plaintiff to his violent sexual acts, Defendant Kershaw caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity. Defendant acted with malice and oppression, and his conduct constituted a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

v. The inhumane conditions of confinement caused by Defendant Kershaw's repeated sexual battery and abuse caused Plaintiff physical, mental, and emotional harm. She was harmed. Plaintiff complied with the FTCA.

23. Plaintiff is entitled to actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including penalties, interest, and equitable relief as the court deems just.

## SECOND CAUSE OF ACTION

### SEXUAL BATTERY

24. Paragraphs 1 through 23 are incorporated by reference.

27

COMPLAINT

25. Plaintiff alleges sexual battery under California common law, California Civil Code §1708.5, and the FTCA.

26. Under California law, a civil cause of action for sexual battery will lie when, *inter alia*, a defendant acts with the intent to cause harmful or offensive contact with a plaintiff using an "intimate part" of either's body, and such contact directly or indirectly results. Cal. Civ. Code §1708.5(a)(1)-(2). Intimate part means "the sexual organ, anus, groin, or buttocks of any person, or the breast of a female; offensive contact means "contact that offends a reasonable sense of personal dignity." *Id.* at (d)(1)-(2). "A person who commits a sexual battery upon another is liable to that person for damages, including, but not limited to, general damages, special damages, and punitive damages." *Id.* at (b).

27. An employer is liable for an employee's sexual battery committed while working—including liability for punitive damages—if the employer ratifies the employee's misconduct. *Andrade v. Arby's Rest. Grp., Inc.*, 225 F.Supp.3d 1115, 1130 (N.D. Cal. 2016). The theory of ratification generally applies when an employer fails to investigate or respond to charges that an employee committed an intentional tort, and this establishes independent employer misconduct which is actionable separate and apart from the employee's liability. " 'If the employer, after knowledge of or opportunity to learn of the agents misconduct, continues the wrongdoer in service, the employer may become an abettor and may make himself

28

COMPLAINT

liable in punitive damages.' " *Id.* (citing *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal.App.4th 833, 852 (1998).)

28. Plaintiff alleges sexual battery as follows:

r. Against Defendant Kershaw in his individual capacity for intentionally causing harmful and offensive contact by forcing Plaintiff to taking all her clothes off, touching and forcing her to perform sexual acts upon another inmate.

s. Against Defendants USA, BOP, and DOES 1 through 20 based on respondeat superior for creating, allowing, and/or knowingly permitting a culture of abuse as pleaded, and under the theory of ratification for ratifying Kershaw's misconduct at work by failing to act on complaints made against them for sexual harassment and assault. These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

t. Plaintiff is entitled to actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including penalties, interest, and equitable relief as the court deems just.

### THIRD CAUSE OF ACTION

### GENDER VIOLENCE

29. Paragraphs 1 through 28 are incorporated by reference.

COMPLAINT

30. Plaintiff alleges gender violence under California Civil Code §52.4 and the FTCA. *See also* Cal. Pen. Code §243.4(a).

31. "Any person who has been subjected to gender violence may bring a civil action for damages against any responsible party. The plaintiff may seek actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. A prevailing party may also be awarded attorney's fees and costs." Cal. Civ. Code §52.4(a).

32. Gender violence "is a form of sex discrimination and means either of the following: (1) One or more acts that would constitute a criminal offense under state law has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction. (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction." *Id.* at §52.4(c).

33. A violation of California Penal Code §243.4 meets the definition of Civil Code §52.4(c)(1) because it defines the elements of criminal sexual battery as follows: "Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching

is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery." Cal. Pen. Code §243.4(a).

34. **Plaintiff alleges gender violence as follows:**.

u.    Against Defendant Kershaw individually.

v.    Against Defendants USA, BOP, Garcia and DOES 1 through 20 based on the doctrine of respondeat superior. These defendants have waived sovereign immunity under the FTCA for this cause of action because it is based on assault/battery. 28 U.S.C. §2680(h).

35.    Plaintiff is entitled to actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including but not limited to penalties, interest, and equitable relief as the court deems just.

## FOURTH CAUSE OF ACTION

### CIVIL CONSPIRACY

36.    Paragraphs 1 through 35 are incorporated by reference.

37.    Plaintiff alleges civil conspiracy against all defendants based on California common law and the FTCA.

38.    "The elements of an action for civil conspiracy are (1) formation and

31

COMPLAINT

operation of the conspiracy and (2) damage resulting to the plaintiff (3) from a wrongful act done in furtherance of the common design." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1062 (2006). A civil conspiracy claim is simply a mechanism for imposing vicarious liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in it perpetration; it is not itself a substantive basis for liability. *Favila v. Katten Muchin Rosenman LLP*, 188 Cal.App.4th 189, 206 (2010). Before liability can be imposed, therefore, a duty must be owed by the co-conspirator to the plaintiff as the doctrine of conspiracy does not impose liability on persons who owe no duty or who are otherwise immune from liability. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 520 (1994).

39. As set forth above, the defendants in this case colluded to perpetrate a culture of sexual violence against the female inmates at FCI Dublin over many years and did so in a manner to prevent the outside world from discovering their misdeeds. The conspiracy started at the top with the warden and continued down the chain of command to permeate every aspect of life at FCI Dublin while Plaintiff were incarcerated there.

40. On information and belief, an agreement among and between the defendants existed with respect to the wrongful acts done in furtherance of their common design. The existence of collusion, cover-up, and conspiracy is evidenced

32

COMPLAINT

from the extent, duration, and severity of the abuse the inmates suffered before those wrongs were discovered.

41.    Defendants preyed on a vulnerable population of women to whom they owed the highest duty of care. Inmates are wards of the state and exist at the sufferance and goodwill of the government while in custody and depend on the government and all of its agents and employees to ensure they are safe, and their basic needs are met. Defendants owed Plaintiff a duty of care but breached that duty by engaging in a common plan or design to subject them to sex-based abuse, assault, harassment, and retaliation.

42.    Defendants' conduct, and all of it, satisfies the standard for wrongful acts because, as pleaded *inter alia* in the First, Second, and Third Causes of Action, Defendants committed both civil torts and criminal acts. Because assault and battery form the underlying wrongful torts upon which Plaintiff' cause of action for civil conspiracy springs, this claim falls within the federal government's waiver of sovereign immunity with respect to "acts or omissions of investigative or law enforcement officers of the United States Government… arising… out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. §2680(h).

43.    Defendants acted with malice, oppression, and/or fraud with respect to the allegations in this complaint, entitling Plaintiff to punitive damages.

COMPLAINT

44.    Plaintiff was harmed by Defendants' conduct and suffered damages as a result. Plaintiff has satisfied the FTCA.

45.    Plaintiff is entitled to actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including but not limited to penalties, interest, and equitable relief as the court deems just.

## FIFTH CAUSE OF ACTION

BATTERY

46.    Paragraphs 1 through 45 are incorporated by reference.

47.    This claim is brought under California common law.

48.    Plaintiff alleges battery as follows:

a.    Against Defendant Kershaw individually for intentionally causing harmful and offensive contact;

b.    Against Defendants USA, BOP, Garcia, and DOES 1 through 20 based on respondeat superior for creating allowing, and/or knowingly permitting a culture of abuse, and under the theory of ratification for ratifying Kershaw's misconduct at work by failing to act on complaints made against them for battery. Defendants have waived sovereign immunity because this claim is based on battery, 28 U.S.C. §2680(h).

COMPLAINT

c.    Plaintiff is entitled to actual damages, compensatory damages, punitive damages, attorney fees and costs, as well as any other remedies provided by law including penalties, interest, and equitable relief as the court deems just.

**SIXTH CAUSE OF ACTION**

NEGLIGENCE

49.    Paragraphs 1 through 48 are incorporated by reference.

50.    Plaintiff allege negligence under California common law and the FTCA as set forth below.

51.    Jailers owe a duty of care to prisoners under state tort law. California case law holds that there is a special relationship between jailer and prisoner, imposing on the former a duty of care to the latter. *Schrubb v. California* 22-cv-00266-EJD (N.D. Cal. May 31, 2022) at *6-7 (citing *Lawson v. Superior Court*, 168 Cal.App.4th 231, 250 (2010).)

52.    Defendant Kershaw owed special and heightened duties of care to Plaintiff as their jailers, and those duties required them to protect Plaintiff against reasonably foreseeable harm including sexual abuse. Alternatively, Defendant owed a general duty of care to Plaintiff.

53.    Defendants breached their duties of care to Plaintiff, and such breaches caused Plaintiff harm.

54.    Plaintiff alleges negligence as follows:

35

COMPLAINT

d.      Against Defendant Kershaw individually for breaching his duty of care to Plaintiff by repeatedly subjecting her to sexual acts.

e.      By repeatedly subjecting Plaintiff to sexual acts, Defendant Kershaw proximately caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

c.      Defendant's conduct lacked any penological justification, and their actions were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in sexually abusing and/or ratifying the sexual abuse of Plaintiff.

d.      Against the United States, BOP and Garcia under the FTCA based on the acts and/or omissions of Kershaw acting in their capacities as employees of BOP and within the scope of said employment, with the permission and consent and ratification of Defendants United States, BOP and Garcia.

e.      Defendants Kershaw viewed custodial duties, as well as mandatory statutory obligations under PREA and BOP policies, to protect Plaintiff as an inmate incarcerated by the United States from foreseeable harm including harm from sexual abuse. In the alternative, they owed a general duty of care to Plaintiff.

COMPLAINT

f. Defendant Kershaw's sexual abuse of Plaintiff was reasonably foreseeable to decision-makers at FCI Dublin, BOP and the United States because his conduct made plain he were abusing her and based on prior knowledge of prior complaints.

g. Defendants Garcia, United States and BOP failed to supervise and operate FCI Dublin in a manner that would have prevented the ongoing sexual abuse of Plaintiff. These defendants did not take reasonable, available measures to abate the risk of harm to Plaintiff and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding prison operations including adequately monitoring officer conduct and responding to complaints of prior misconduct.

h. Defendant Kershaw's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of Defendants United States, BOP, and Garcia.

i. Defendants caused Plaintiff physical violation, injuries to personal dignity, prior physical injury, past and future mental pain and suffering, emotional distress, and other injuries.

j. Defendants acted with malice and oppression and reckless or callous disregard of Plaintiff' rights, entitling Plaintiff to punitive damages, as supported by the specific factual allegations.

37

COMPLAINT

k.     Plaintiff seeks nominal damages resulting from the repeated violations of her personal dignity and from physical injury; non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and offenses to her personal dignity; and punitive damages.

l.     Against the United States, BOP, and Garcia under the FTCA based on the acts and/or omissions of Kershaw acting in their capacities as employees of BOP and within the scope of said employment, with the permission and consent and ratification of Defendants United States, BOP, and FCI Dublin.

m.     Defendant Kershaw owed custodial duties, as well as mandatory statutory obligations under PREA and BOP policies, to protect Plaintiff as an inmate incarcerated by the United States from foreseeable harm including harm from sexual abuse. In the alternative, they owed a general duty of care to Plaintiff.

i.     Defendant Kershaw's sexual abuse of Plaintiff was reasonably foreseeable to decision-makers at FCI Dublin, BOP and the United States because his conduct made plain he was abusing her and based on prior knowledge of prior complaints.

ii.     Defendants United States, BOP, FCI Dublin and Garcia failed to supervise and operate FCI Dublin in a manner that would have prevented the ongoing sexual abuse of Plaintiff. These defendants did not take reasonable,

38

COMPLAINT

available measures to abate the risk of harm to Plaintiff and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding prison operations including adequately monitoring officer conduct and responding to complaints of prior misconduct.

53.     Defendant Kershaw's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of Defendants United States, BOP, and Garcia.

54.     Defendants caused Plaintiff physical violations, injuries to personal dignity, prior physical injury, past and future mental pain and suffering, emotional distress, and other injuries.

55.     Defendants acted with malice and oppression and reckless or callous disregard of Plaintiff' rights, entitling Plaintiff to punitive damages, as supported by the specific factual allegations.

55.     Plaintiff seeks damages resulting from the repeated violations of her personal dignity and from physical injury; non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and punitive damages.

Plaintiff demands a jury trial on all claims so triable.

///

///

39

COMPLAINT

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.  Economic and noneconomic damages in an amount to be determined at trial;

2.  Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.  Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.  An award to Plaintiff of reasonable costs and fees; and

5.  Such other and further relief as the Court may deem fit and proper.


Dated:  March 20, 2026                    Respectfully submitted,

                                          /s/ Nicholas J.P. Wagner
                                          Nicholas J.P. Wagner
                                          Counsel for Plaintiff

40

COMPLAINT